129 P.2d 636

**PAULOS v. JANETAKOS.**

No. 4670.

Supreme Court of New Mexico.

Sept. 24, 1942.

Owen B. Marron, Gino J. Matteucci, and William T. O'Sullivan, all of Albuquerque, for appellant.

Simms, Modrall & Seymour and Robert Hoath LaFollette, all of Albuquerque, for appellee.

BRICE, Chief Justice.

In August of 1935 the appellant filed an equity suit in the district court of Bernalillo County against the appellee Janetakos individually and as executor of the estate of Mary Cornetto Janetakos, deceased, seeking the specific performance of an alleged contract between him and the decedent. It was stated in the complaint, among other things:

"That in the said year 1921, the said Mary Cornetta Janetakos promised the plaintiff that if he would go to live in her household in the City of Albuquerque, New Mexico, and care for her in sickness and in health as a son until the time of her death, he should have and be entitled to all her property, both real and personal, as fully and to the same extent as if he were her sole lawful issue.

"That pursuant. to such offer as so made by the said Mary Cornetto Janetakos to the plaintiff, the plaintiff then and there accepted said offer. Thereupon the plaintiff entered into the performance of said contract on his part and went to live in the household of the said Mary Cornetto Janetakos; that the said Mary Cornetto Janetakos was somewhat feeble in health, her eyesight was poor and she required constant attention and many services of a personal nature to minister to her needs and wants, all of which were attended to by the plaintiff in the course of the performance of the contract on his part.

"That during the course of the performance of said contract, the said Mary Cornetto Janetakos developed a strong personal regard for this plaintiff and regarded and treated him as her own and showed deep affection for him, and, in turn, the plaintiff developed a ,strong personal regard for the said Mary Cornetto Janetakos and regarded, treated and ministered to her wants and desires as his mother.

"That the plaintiff fully, faithfully and completely performed said contract on his part from the time same was made in the year 1921 until the month of March, 1933, when the said Mary Cornetto Janetakos refused to permit the plaintiff to further perform said contract and refused to permit the plaintiff to continue to live in her household * * *, although the plaintiff continued to be ready, willing and able to perform said contract and offered so to do.

"That the plaintiff during the time he performed said contract abandoned all other prospects and opportunities in life for the purpose of performing his said contract with the said Mary Cornetto Jane-

takos; that the services rendered by plaintiff to her were of great value and no less than would have been rendered by a son to his own mother; that the monetary value of said services as so rendered were of such a nature that their value would be difficult to determine in dollars and cents." ·

It was further stated that deceased died leaving a will, by the terms of which she attempted to give William B. Janetakos all of her property, in violation of the terms of her agreement with appellant. The appellant prayed that the appellee be ordered and directed to convey all of said property, after the payment of debts, etc, to him.

The answer denied the making of such contract, and in the alternative, that if made it was never performed by appellant.

After trial and a reversal by this court (Paulos v. Janetakos, 41 N.M. 534, 72 P. 2d 1) the case was tried a second time, resulting in a decree for the appellee which was affirmed by this court. Paulos v. Janetakos, 43 N.M. 327, 93 P.2d 989.

In 1936, while the equity suit was pending, the appellant filed this action at law, consisting of two counts, the second of which is involved here. By it appellant sought to recover for the reasonable value of services alleged to have been performed by him for the deceased during a period of nine years. It is alleged in the complaint:

"That at the special instance and request of Mary Cornetto Janetakos, plaintiff rendered to said decedent in her lifetime valuable services. That said services consisted of cooking, washing dishes and household work of sundry kinds in connection with the care of said decedent during her lifetime, the said decedent being during the time said services were rendered by the plaintiff rather feeble in health. That said services further consisted of running errands for said decedent in her lifetime, work in her hotel, doing repair work, painting and cleaning, general supervision and management of the hotel operated by the said decedent and known as the Vendome Hotel Annex; and claimant also operated various businesses for said decedent in the name and on behalf of said decedent and devoted his time and attention to such businesses for the use and benefit and profit of the said decedent in her lifetime."

The appellee plead the trial court's decree and findings in the equity suit as an estoppel and binding on the appellant, and determinative of certain essential issues against him in this action. The trial court sustained the defense of res judicata and dismissed the complaint.

Appellee does not contend that appellant is estopped by election of remedies or by having taken inconsistent positions in judicial proceedings, or that the two suits were actions brought on the same claim or demand. The contention is that while the causes of action are different that certain findings in the equity case on controverted questions of fact are binding in this action and are decisive of the case against appellant.

As this action and the equity suit have identical parties, but are brought upon different claims or demands, the judgment in the latter operates as an estoppel only as to the questions, points, or matters of fact in issue in that case which were essential to a decision, and upon the determination of which the judgment was rendered. In re McMillan's Estate, 38 N.M. 347, 33 P.2d 369; Flint v. Kimbrough, 45 N.M. 342, 115 P.2d 84; Cromwell v. Sac County, 94 U.S. 351, 24 L.Ed. 195; United Shoe Machinery Corp. v. United States, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; Larsen v. Northland Transportation Co., 292 U.S. 20, 54 S.Ct. 584, 78 L.Ed. 1096; Karameros v. Luther, 279 N.Y. 87, 17 N.E. 2d 779; Silberstein v. Silberstein, 218 N.Y. 525, 113 N.E. 495; House v. Lockwood, 137 N.Y. 259, 33 N.E. 595; United States Fidelity & Guaranty Co. v. McCarthy, 8 Cir., 33 F.2d 7, 70 A.L.R. 1447.

The appellant sued to recover for services which he claims to have performed for Mrs. Janetakos, and at her request, alleged to be of the value of $27,000.

The appellee asserts that the question of whether appellant performed services of value for Mrs. Janetakos was an issue in the equity case, litigated therein and determined against appellee.

He states that the issue was tendered by the following allegation in the complaint: "That the services rendered by plaintiff (appellant) to her (Mrs. Janetakos) were of great value, and no less than would have been rendered by a son to his moth-er." That evidence was introduced by the respective parties as to the kind and character of services performed by the appellant for Mrs. Janetakos; and that findings of fact Numbers 4, 7 and 8 on that issue, are binding upon appellant, which findings are as follows:

"4. The plaintiff failed in every business undertaking he tried, did no useful work for Mrs. Cornetto, but lived in luxury and ease at her expense until she determined to put him out, which she did in March, 1932."

"7. At the time she sent him away and up to the time of her death, Mary Cornetto was not indebted to the plaintiff for his alleged services to her, either upon expressed or implied contract, in any amount whatsoever; but, on the contrary, the plaintiff had received from her money and help greatly in excess of the value of anything he did for her and was her debtor at the time she died rather than her creditor."

"8. The plaintiff failed to do and perform the things on his part, which he alleges in the complaint it was his duty to do under the contract, which he claims he made with Mary Cornetto."

We have stated that a prior judgment in a different cause of action between the same parties operates as an estoppel only as to questions, points or matters of fact in issue in that cause which were essential to a decision, and which were decided in support of the judgment. What is an issue of fact in the sense in which it is used in

the decisions of the courts in like cases, is the first question.

 It must be a fact, the determination of which is material, relevant, and necessary to a decision of the case upon its merits, Mehlop v. Central Union Trust Co., 235 N.Y. 102, 138 N.E. 751; Block v. Bourbon County Com'rs, 99 U.S. 686, 25 L.Ed. 491; Stannard v. Hubbell, 123 N.Y. 520, 25 N.E. 1084. It must not be a fact that comes collaterally or incidentally in question (Block v. Bourbon County Com'rs, supra), or one that is not material or essential to a decision, even though put in issue by the pleadings. House v. Lockwood, 137 N.Y. 259, 33 N.E. 595; Silberstein v. Silberstein, supra, or evidentiary facts from which the ultimate fact is inferred. Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069.

 Our conclusion is that such fact must be an ultimate fact, such as is required in allegations of fact in good pleadings, or in findings of fact in cases tried to the court. It is the ultimate fact, the fact without which the judgment would lack support in an essential particular. This is the rule of the Federal Courts.

In commenting on Cromwell v. Sac County, supra, regarding an interpretation of the meaning of the word "issue" as used in that case, and also in the case of Baltimore S. S. Co. v. Phillips, supra, upon the same question, the Circuit Court of Appeals of the 8th Circuit, in United States F. & G. Co. v. McCarthy, supra [33 F.2d 10, 70 A.L.R. 1447], said:

"Evidentiary facts are not issues—they are merely the means by which the end is attained. The matters in issue, which are concluded by the judgment, are the ultimate facts as developed by the pleadings and the evidence. From Smith v. Town of Ontario, C.C., 4 F. 386, 390, 18 Blatch. 454, 457, we quote on this subject: 'The matter in issue has been defined in a case of leading authority as "that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading." King v. Chase, 15 N.H. 9, (41 Am.Dec. 675). The issues presented by the pleadings may be modified by the proceedings upon the trial, as where a defense is withdrawn from consideration, or where a count in declaration is abandoned. However this may be, the matter in issue or the point in controversy is that ultimate fact or state of facts in dispute upon which the verdict or finding is predicated.' This case, together with King v. Chase, 15 N. H. 9, 41 Am.Dec. 675, is referred to with apparent approval in Reynolds v. Stockton, 140 U.S. 254, 270, 11 S.Ct. 773, 35 L.Ed. 464."

Finding No. 8 was decisive of the equity case.

There was no finding of an ultimate fact in the court's finding No. 7. There was no issue regarding any indebtedness due from the deceased to appellant for services. There was no question of an implied contract, nor was the fact that her generosity greatly exceeded the value of the services performed for her by the appellant an issue in the equity case.

The only question deserving consideration is whether the statement "the plaintiff * * * did no useful work for Mrs. Cornetto * * '*'" is binding on the appellant in this case. The statement in that finding that appellant lived in luxury and ease at Mrs. Janetakos' ·expense until she determined to put him out, was not an issue in the equity case and, if anything, merely an evidentiary fact.

Findings 4 and 7 were attacked by appellant upon the ground that they were outside the issues, and contrary to uncontradicted evidence. But we did not find it necessary to determine these questions. This court, through Chief Justice Bickley, stated:

"The issues * * * as set out in appellant's brief are:

" '1. Was there a contract such as that alleged in the complaint between plaintiff and decedent?

" '2. Did plaintiff perform his obligations under the contract?

" '3. Were the circumstances such as would justify a court of equity in decreeing specific performance of the contract?' "

We then stated that finding number 8 was not attacked, and was supported by substantial evidence, and was determinative of the issues. Then there follows: "Hence, it is needless to discuss further appellant's objections to other findings or decide whether such findings are immaterial or outside the issues. * * * Appellant was not prejudiced by such findings, as far as the final decision in this case is concerned, and cannot be prejudiced in the future if such findings were in fact immaterial or outside the issues."

It is obvious that this court did not consider that a decision of the equity case was dependent on any fact found or stated in finding No. 4.

 The statement in that finding that appellant "did no useful work for Mrs. Cornetto", is inconsistent with finding No. 7 in which inferentially the trial court found that he performed services for which he had been well paid. We are convinced that no person could live in the household of another for 11 years without performing some useful work; and that the conflict should be resolved in favor of finding No. 7. As to some extent finding No. 4 is impeached by its improbability as well as by the conflict stated; and in view of the fact that we doubt that, and are not in agreement whether, the finding that the appellant did no "useful work" is a finding of an ultimate fact as distinguished from a finding of an evidentiary fact; and having in mind that a plea in bar based upon res judicata ought not to prevail unless fully established, we conclude that the trial court erred in holding that appellant is bound by that finding in the present suit.

The following cases are in some particulars similar and have been considered: Laird v. Laird's Estate, 127 Mich. 24, 86 N.W. 436; Black v. Miller, 158 Iowa 293, 138 N.W. 535; Bosely v. Grand Rapids Trust Co., 267. Mich. 494, 255 N.W. 440;

Clifton v. Meuser, 88 Kan. 408, 129 P. 159, 43 L.R.A.,N.S., 124; Messier v. Messier, 34 R.I. 233, 82 A. 996; Pillsbury v. Early, 324 Ill. 562, 155 N.E. 475.

The judgment of the district court is reversed and the cause remanded with instructions to grant to appellant a new trial, and it is so ordered.

SADLER and BICKLEY, JJ., concur.

MABRY and ZINN, JJ., did not participate.